[Civ. No. 346.    Third Appellate District.—August 21, 1909.]

G. F. GRAY and H. N. GRAY, Copartners, etc., Appellants, v. TIMES-MIRROR COMPANY, a Corporation, Respondent.

ACTION—DISMISSAL FOR WANT OF DILIGENT PROSECUTION—UNREASONABLE DELAY IN RESTORING RECORDS—DISCRETION NOT ABUSED.—In an action brought in San Francisco in which the original records were destroyed by the fire of April 18, 1906, copies of which were procured by defendant's counsel, and were supplied to counsel for plaintiffs, with an offer to stipulate for restoration of the records, but such stipulation was not applied for by plaintiff's counsel for a period of thirteen months, the court did not abuse its discretion in dismissing the action for want of diligence in its prosecution.

ID.—INHERENT POWER OF TRIAL COURTS.—Trial courts possess inherent power to dismiss pending actions, on the ground that they have not been diligently prosecuted.

ID.—EXCUSE FOR DELAY—PRESS OF BUSINESS CAUSED BY DISASTER.— The fact that the attorney for the plaintiff had an accumulated pressure of other business as the result of the great San Francisco disaster, though a proper matter for consideration by the trial court on the motion to dismiss, could not of itself show an abuse of discretion by the trial judge in dismissing the action, or justify plaintiffs' counsel in neglecting an action instituted by them, to the great inconvenience and detriment, perhaps, of the adverse party.

ID.—ILLNESS OF TRIAL JUDGE—NEGLECT TO SECURE STIPULATED RESTORA-
TION—FORMAL ACT—POWER OF OTHER JUDGES—JUDICIAL NOTICE.—
The illness of the particular trial judge, to whom the action had
been assigned, is not a reasonable excuse for delay in obtaining the
restoration of the records upon stipulation. Such restoration would
be a mere formal act, which could be ordered by any other judge
of the same court, during such illness, upon stipulation of the parties.
This court takes judicial notice that there are twelve superior
judges in San Francisco, any one of whom could have restored the
records in such case.

ID.—PENDENCY OF DEMURRER TO COMPLAINT SUBMITTED UPON BRIEFS—
DUTY OF PLAINTIFF.—The pendency of a demurrer to the complaint
which had been submitted upon briefs at the time of the disaster
is no excuse for delay in securing the restoration of the records.
It would have been an idle act to pass upon the demurrer without
such restoration; and it was the duty of the plaintiffs diligently to
pursue the action, whether the issue be of law or of fact, and, as
moving actors in the litigation, to take all steps necessary to secure
a decision upon the demurrer; and it was not the duty of the de-
fendant to do so.

ID.—INJURY PRESUMED FROM UNREASONABLE DELAY—INJURY IMMATE-
RIAL ON QUESTION OF ABUSE OF DISCRETION.—The law presumes in-
jury from unreasonable delay; but the inquiry whether the re-
spondent suffered any material inconvenience or hardship by reason
of the delay is immaterial upon the question whether the facts show
an abuse of the discretion of the trial judge in dismissing the ac-
tion for unreasonable delay in its prosecution.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Geo. H. Buck, Judge
presiding.

The facts are stated in the opinion of the court.

Fisher Ames, and Ames & Manning, for Appellants.

Hunsaker & Britt, for Respondent.

HART, J.—The court below rendered and caused to be
entered a judgment dismissing this action on the ground that
plaintiffs had not prosecuted the same with reasonable dili-
gence.

This appeal is by the plaintiffs from said judgment on a
bill of exceptions.

There is no dispute with regard to the facts, and, as they are fully and accurately narrated in the brief of counsel for the respondent, we shall here state them in the language of said brief:

''The action is one to recover damages claimed to have been sustained by the plaintiffs by reason of the publication by defendant of an alleged libelous article in the Los Angeles 'Sunday Times' July 3, 1904. The complaint was filed September 20, 1904. After defendant had filed a demurrer, an amended complaint was filed February 7, 1905, to which defendant filed a demurrer February 15, 1905, which was sustained May 11, 1905. A second amended complaint was filed May 25, 1905, to which defendant demurred June 3, 1905. This demurrer was under submission and undisposed of April 18, 1906, on which day all of the pleadings and records in the cause were destroyed by the general conflagration of that date.

''September 23, 1906, the attorneys for defendant received from Mr. Ames a letter dated September 22, 1906, requesting copies of the papers in the action, together with a stipulation that they might be substituted in place of the destroyed originals. In this letter the writer, among other things, said:

'' 'All the public court records and all of my private record papers in the case of *Gray et al.* vs. *The Times-Mirror* were destroyed by fire. Will you kindly send me copies of your papers together with stipulation that they may be substituted in place of the destroyed originals? I have been unable to give this matter attention before this time on account of the terrible confusion incident to the loss of all papers in my office and the total loss of all our public records.

'' 'Kindly send copies of all briefs and pleadings in the case. Please send bill for copies of papers, and I will promptly send check for the same.

'' 'An early reply will be esteemed a great favor.'

''Immediately upon the receipt of Mr. Ames' letter directions were given to have a copy of the office files of Hunsaker & Britt of the papers in said action made for Mr. Ames; and on October 5, 1906, copies of all of the papers requested by Mr. Ames, including the briefs and a copy of all entries which had been made in the office docket or register of actions kept by Hunsaker & Britt relating to the proceedings in said cause

were sent by mail to Mr. Ames, together with a letter dated October 5, 1906, in which, after stating that the copies had just been completed and compared, it was said:

" 'This copy was made by our office force, and there is no charge for it. We are also sending a copy of the entries in our register of actions. If you will take such portions of this copy as you desire to have substituted, and prepare the stipulation, we shall be pleased to sign it.'

"October 10, 1906, Mr. Ames wrote Mr. Hunsaker a letter in which he said:

" 'Many thanks for your kindness, courtesy and promptness in forwarding these copies.

" 'As soon as I can examine them I will prepare a stipulation embracing such of the papers as are necessary to be filed in order to restore the record in our superior court, and forward same to you for signature.'

"Nothing further was done until November 14, 1907—thirteen months and four days after the date of the letter of Mr. Ames acknowledging receipt of the copies of the record— on which date Messrs. Ames and Manning mailed to Hunsaker & Britt the 'petition, papers, stipulation and order restoring records' in the case, with the request that they sign the stipulation. November 21, 1907, Hunsaker & Britt wrote Messrs. Ames & Manning that they had inserted certain papers which had been omitted which constituted a part of the record, and had modified the proposed stipulation for the restoration of the record by inserting the following clause:

" 'But by entering into this stipulation defendant does not waive its right to move to dismiss the action for the failure of plaintiffs to have prosecuted the same with diligence, or in any manner waive its right to move to dismiss the action for the delay of plaintiffs in instituting proceedings for the restoration of the record in said cause.'

"The stipulation as thus modified was filed and an order restoring the record made December 9, 1907.

"December 20, 1907, defendant served notice of its motion to dismiss the action, on the grounds that the plaintiffs had not prosecuted the same, and had not instituted or prosecuted the proceedings for the restoration of the record, with reasonable or any diligence, and that plaintiffs had not given an undertaking as required by section 1 of the act entitled

'An Act concerning actions for libel and slander,' approved March 23, 1872, as amended April 16, 1880, and that the record, as restored, fails to show that any such undertaking was given by plaintiff.''

The reasons upon which resistance to the motion is urged are set forth in an affidavit made by Mr. Fisher Ames, counsel for the plaintiffs.  They are as follows:

''At the time of receiving said papers, a large amount of business had accumulated in affiant's office, by reason of the holidays succeeding the fire and earthquake of April, 1906. and by reason of the unsettled condition of all business affairs in San Francisco, and the imperfect facilities of transacting business, and the difficulties under which the same could be transacted.

''That all of affiant's papers, documents and memoranda, in all cases then pending, in which affiant was acting, or had acted, as attorney, were totally destroyed, and that it was extremely difficult, and in many instances nearly impossible, for affiant to make any headway or progress in the transaction of legal business, in which he was interested.

''That affiant acted with all possible dispatch in the transaction of business, in his office, attending first, as it became necessary, to matters which were most pressing.

''That, owing to the prolonged ill-health of the judge of this department, which began in the latter part of May, 1907, and continued until about the month of October, 1907, during which time the said judge was almost continuously absent from the bench, by reason of sickness, affiant delayed the application to restore the records in this action, until the said judge was restored to health, and had returned to the bench, and resumed his judicial labors.

''That affiant deemed it proper that this matter should be heard by the said judge of this department, for the reason that defendant's demurrer to plaintiffs' second amended complaint was pending before said judge, and undecided, the same having been submitted to the court for consideration and decision on briefs duly prepared, served and filed on or about the twelfth day of April, 1906, a few days before the fire and earthquake.''

Sections 581a and 583 of the Code of Civil Procedure are not, as is readily observable from the statement of the facts, involved here.

But that *nisi prius* courts possess inherent power to dismiss pending actions upon the ground that they have not been diligently prosecuted is a proposition repeatedly confirmed and well settled in this state. (*Kubli* v. *Hawkett,* 89 Cal. 638, [27 Pac. 57]; *First National Bank* v. *Nason,* 115 Cal. 626, [47 Pac. 595]; *Stanley* v. *Gillen,* 119 Cal. 176, [51 Pac. 183]; *People* v. *Jefferds,* 126 Cal. 296, [58 Pac. 704]; *San Jose L. & W. Co.* v. *Allen,* 129 Cal. 247, [61 Pac. 1083]; *Mowry* v. *Weisborn,* 137 Cal. 110, [69 Pac. 971]; *Galbraith* v. *Lorne,* 142 Cal. 295, [75 Pac. 831]; *Marks* v. *Keenan,* 148 Cal. 161, [82 Pac. 772]; *Bernard* v. *Parmelee,* 6 Cal. App. 537, [92 Pac. 658]; *In re Heywood's Estate,* 154 Cal. 312, [97 Pac. 825]; *Focha* v. *Focha's Estate,* 8 Cal. App. 707, [97 Pac. 321].)

The only question presented here for determination is, therefore, Did the court's order dismissing the action involve an abuse of discretion under the facts as the record discloses them?

The facts constrain a negative answer to the question.

It is manifest that the most serious difficulty which could confront plaintiffs in properly proceeding to a prosecution of the action after the destruction of the record in this cause by fire was in the procurement of copies of the papers, pleadings, orders, etc., to be substituted as the record herein in lieu of the destroyed record; but, this difficulty having been readily overcome through the prompt assistance of the attorneys for the respondent, there was nothing remaining to be done but to secure a stipulation from the latter consenting to the substitution of the copies for the lost record, and then an order of the court restoring said record. On October 5, 1906, the attorneys for the respondent addressed to the attorneys for the appellants a letter in which they expressed a willingness to enter into a written stipulation authorizing the copies of the papers procured from them to be filed as the record in the cause. This letter was answered by Mr. Ames in a letter under date of October 10, 1906. There was then, it will be seen, nothing in the way to prevent the restoration of the record within a reasonable time after the time which would

be required to prepare the stipulation, transmit it to the attorneys for the respondent at Los Angeles, and secure their promised signature thereto and its return. But counsel for the appellants, after having been assured that the stipulation assenting to the restoration of the lost record would be readily signed by counsel for the respondent, made no further move in the direction of restoring the record until the fourteenth day of November, 1907, a few days beyond thirteen months subsequently to the date of the letter of Mr. Ames to the attorneys for the defendants, acknowledging the receipt of the papers, orders, etc., constituting the proposed substituted record, when the former sent to the latter for their signatures a stipulation consenting to the substitution of said papers and orders, etc.

There is nothing in the affidavit of appellants' counsel which suggests any valid excuse for this unreasonable delay, or, in other words, there is nothing therein from which this court would be justified in declaring that the court below, in refusing to accept the excuse offered by the appellants, abused its discretion. The fact that the general confusion and unsettled condition of affairs in San Francisco for some weeks or months after the occurrence of the great misfortune to that city had caused an unusually large amount of business to accumulate in the law offices of counsel for the appellants was, of course, a proper matter for consideration by the court in the determination of the motion to dismiss. But we do not hesitate to say that it was a matter entitled to no very great weight, since it is obvious that the very same reason could be urged in almost any case and, if valid, operate to interminably postpone the final disposition of such cause. In other words, we are unable to appreciate the logic of the plea that, because an attorney has other matters to which he prefers to give professional attention, he should be justified in neglecting, to the great inconvenience and detriment perhaps of the adverse party, some particular suit or action which he has instituted.

Nor is the fact that the presiding judge of the department of the superior court to which the action was assigned was too ill to attend to his judicial duties from May, 1907, until October of the same year, a reasonable excuse for the delay

11 Cal. App.—11

in securing the order for the restoration of the record. There are, as this court judicially knows, twelve judges of the superior court in and for the city and county of San Francisco. As counsel for the respondent well say in their brief, ''the signing of the order upon presentation of the proper stipulation would have been a mere formal act, which could have been performed at any time by any of the twelve judges of the superior court'' of said city and county. There was, therefore, no overruling necessity for the postponement of the matter until the judge to whose department the cause had been assigned for trial had been restored to health sufficiently to give attention to his official duties. And it may be suggested that, if the continued illness of a judge were a valid excuse for inertness in pressing an action to issue or trial, the delay might be interminable or at least involve an indefinite postponement of the prosecution of the action, since in such case whether it would or would not be brought to issue or trial would rest upon what might be the uncertain contingency of the recovery of the judge.

The demurrer to the second amended complaint was under submission and undecided at the time of the destruction of the record. This demurrer, by order of the court, was submitted upon points and authorities to be filed by the respective parties, the reply to the reply brief of plaintiffs having been filed on April 4, 1906, within twelve days after the respondent's counsel were served with a copy of the points and authorities of plaintiffs. It is clear that a decision on the demurrer could not well have been had until the restoration of the record, including the points and authorities addressed to the question raised by the demurrer. And even if the court could have done so, it would have been an idle act to have rendered a decision on the demurrer before the record was restored or competent secondary evidence thereof filed in lieu of the destroyed record (Stats. 1906, Ex. Sess., p. 73) and, therefore, before it could be known that the record would be restored at all, or that there was any intention of restoring it or that further steps would be taken to bring the cause to issue and trial.

Counsel for plaintiffs declare that they could not force a decision on the demurrer. This proposition cannot be disputed, yet it was the duty of plaintiffs, the moving actors in

the litigation, to take all the steps necessary to secure a decision on the demurrer. It was not the duty of the defendant to do so. (*San Jose L. & W. Co.* v. *Allen,* 129 Cal. 247, [61 Pac. 1083]; *Kubli* v. *Hawkett,* 89 Cal. 638, [27 Pac. 57]; *Mowry* v. *Weisborn,* 137 Cal. 110, [69 Pac. 971].) In the last-mentioned case the supreme court says:

"It is true that the defendant may bring about a trial of the issue presented by his demurrer, but he is not under any duty to do so; his attitude in the case is involuntary, and quite different from that of the plaintiff; he is put to a defense only, and can be charged with no neglect for failing to do more than meet the plaintiff step by step. The plaintiff is the party charged with the duty of diligence in prosecuting the action, as the issues are presented. The case is at issue, whether it be an issue of law or an issue of fact, and when at issue the duty is upon the plaintiff to diligently pursue the action."

In the case of *In re Haywood's Estate,* 154 Cal. 315, [97 Pac. 826], where a motion was made to dismiss certain appeals for want of prosecution, it is said: "Upon the hearing it was argued that it was the duty of respondents to restore the record, and that until they did so the appellant were justified in delaying the prosecution of the appeal. The contention is unfounded. . . . The appellant was endeavoring to overthrow those orders, and a restoration of the record thereof was by her considered necessary to enable her to do this. The duty was on her to effect a restoration of the records if she would escape the responsibility for unreasonable delay in the prosecution of her appeals. The final question, therefore, is, Has she been sufficiently diligent in seeking such restoration, or, if negligent, is her neglect excusable?"

There is some discussion in the briefs of the proposition whether the respondent suffered any material inconvenience or hardship by the delay. The discussion is without force upon the only question which is involved here—whether the facts disclose an abuse of discretion by the trial court in the granting of the motion. We do not understand it to be necessary for the party moving to dismiss for want of diligence in prosecuting an action to affirmatively show the extent of the inconvenience or injury he has suffered or may suffer by

reason of the delay. The law will presume injury from unreasonable delay. It is the policy of the law to favor and encourage a prompt disposition of litigation, and this policy is the outgrowth of sound and substantial reasons. The doctrine of *laches* as a bar to the assertion of stale claims and of statutes of limitations rests upon the same reasons or principle. A party against whom an action is instituted is entitled to as speedy a disposition thereof as is consistent with his own and the rights of the plaintiff, and if he who starts the law in motion does not with reasonable promptness pursue all the steps necessary to bring the litigation to an end, he should suffer the penalty of his default. It is no answer to say that the respondent did not, during the period of the delay, utter a word of protest against such delay. As we have said, it was the duty of the plaintiff to *act*, and to act with reasonable promptness and diligence. It was not the duty of the respondent to make any move except such as the law requires it to make in response to the movements of plaintiff at the various stages of the litigation.

As stated, the facts do not disclose, in our opinion, an abuse of discretion by the trial court in dismissing this action. Nearly all the cases cited by appellants are where the supreme court sustained the refusal of the trial court to grant the motion to dismiss for want of diligence in prosecuting the action, merely holding that the facts failed to disclose an abuse of discretion. In *Ferris* v. *Wood,* 144 Cal. 429, [77 Pac. 1037], the judgment of dismissal was reversed because it clearly appeared that the facts *in that case* reasonably accounted for and excused the delay in serving the summons. But many of the cases relied upon by the appellants were reviewed by this court in *Bernard* v. *Parmelee,* 6 Cal. App. 537, [92 Pac. 658], where it is said: "Each case must, as we have seen from all the authorities, rest upon its own peculiar circumstances, or, as it is expressed in *First Nat. Bank* v. *Nason,* 115 Cal. 626, [47 Pac. 595], 'each particular case presents its own peculiar features, and no iron-clad rule can justly be devised applicable alike to all.' "

The judgment appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.